Grafton,  
June, 1898.

## PLYMOUTH *v.* HAVERHILL.

One who is unable from his income to maintain himself and wife, caring for her as her condition requires, and support his son, and has not sufficient credit or property to do so without disposing of his homestead and furniture, is not liable for the maintenance of his son who stands in need of relief.

The support of a person under arrest upon criminal process and in the custody of a keeper appointed by the sheriff is chargeable to the county, under P. S., c. 282, s. 4.

ASSUMPSIT, to recover for the support of one Harry Frizzell, alleged to be a pauper. The plaintiff expended $462.03 for the support of Frizzell between December 16, 1896, and February 15, 1897. The amounts so expended were reasonable and necessary. Forty dollars of this amount was incurred before December 22, 1896. The alleged pauper was a minor residing in Plymouth, was poor and unable to support himself, and had a settlement in the town of Haverhill derived from his father, William Frizzell.

At the time, the father declined to support his son on the ground that he was then unable to do so. The father was then unable from his income, which was the amount of his wages, to maintain himself and his wife, caring for her as her condition required, and support his son; and he had not then sufficient credit or property with which to do so without disposing of his homestead, or both his homestead and furniture.

December 16, 1896, the overseer of the poor of the town of Plymouth took charge of Harry Frizzell, employed physicians and nurses to care for him, and became responsible for his support. December 21, 1896, the solicitor of Grafton county made complaint against him for an assault with intent to kill, and caused a warrant to issue and be placed in the hands of an officer. December 22, 1896, the officer went to the house where Frizzell was confined to his bed and, by direction of the county solicitor, placed him under arrest. He did not remove him because it was impossible to do so on account of his condition, but appointed his nurse a keeper over him to prevent his escape; and he remained under arrest in this way until February 22, 1897, when he was discharged from arrest under this warrant. Neither the solicitor nor the officer made any express contract on the part of the county to support him or pay any of his bills, or changed in any way the existing state of affairs, except as they were changed as a matter of law by his arrest and the ap-

pointment of a keeper, the overseer of the poor of the town of Plymouth all this time continuing to take charge of him and to be responsible for his support. At the request of the defendant, it is found that William Frizzell had sufficient property and credit to pay the expense incurred up to the time of the arrest of his son, but at that time it was apparent the expenses of his sickness would be quite large.

*Burleigh & Adams*, for the plaintiffs.

*Smith & Sloane*, for the defendants.

PARSONS, J. The first ground urged against the liability of the defendant town under the statute, for the sums paid by the plaintiffs for the support of Harry Frizzell, is that he was not a pauper because his father was of sufficient ability to maintain him. Whether the father was or was not of sufficient ability, is a question of fact. *Poplin* v. *Hawke*, 8 N. H. 305; *Moulton-borough* v. *Tuftonborough*, 43 N. H. 316; *Litchfield* v. *Londonderry*, 39 N. H. 247, 252.

The finding that at the time the support was furnished the father was unable from his own income to maintain himself and wife, caring for her as her condition required, and support his son, and had not then sufficient credit or property with which he could pay for the support of his son, after maintaining himself and his wife and caring for her as her condition required, without disposing of his homestead, or both his homestead and furniture, is upon the authorities a finding that as matter of fact he was not of the sufficient ability required by the statute to render him liable. P. S., c. 84, s. 12; *Hollis* v. *Davis*, 56 N. H. 74, 82; *Litchfield* v. *Londonderry*, 39 N. H. 247; *Colebrook* v. *Stewartstown*, 30 N. H. 9; *Poplin* v. *Hawke*, 8 N. H. 305.

The legal liability of a father for the support of his minor son is entirely dependent upon the statute. If the cases cited by the defendants (*Hillsborough* v. *Deering*, 4 N. H. 86, 96; *Dover* v. *McMurphy*, 4 N. H. 158, 161) are authority for a different conclusion, they have long since been overruled in this state. *Burns* v. *Madigan*, 60 N. H. 197; *Barker* v. *Hibbard*, 54 N. H. 539, 540; *Hammond* v. *Corbett*, 50 N. H. 501, 505; *Bundy* v. *Hyde*, 50 N. H. 116, 123; *Kelley* v. *Davis*, 49 N. H. 187; *French* v. *Benton*, 44 N. H. 28, 30. This finding of fact is not disturbed by the finding that William Frizzell, the father, "had sufficient property and credit to pay the expense incurred up to the time of the arrest of his son, but at that time it was apparent the expenses of his sickness would be quite large." The whole finding taken together is, in substance, that the father was not of sufficient ability to furnish the son such support as his condition de-

manded. As it appears that during the time of the relief for which suit was brought Harry Frizzell was poor and unable to support himself, and without relations of sufficient ability to support him, the town of Haverhill in which he had a legal settlement is liable in this action for the sums legally expended by the town of Plymouth for his support. P. S., c. 84, s. 13.

December 22, 1896, Harry Frizzell was arrested upon a criminal charge, upon a warrant issued by the solicitor of the county. "Every jailer shall provide each prisoner in his custody with necessary sustenance, clothing, bedding, fuel, and medical attendance, and the county commissioners shall allow him, out of the county treasury, a reasonable compensation for the support of all prisoners confined on criminal process." P. S., c. 282, s. 4. It was therefore the duty of the sheriff having Frizzell in custody upon criminal process to provide for him and furnish him necessary medical attendance. Perkins v. Grafton County, 67 N. H. 282, 283; Amherst v. Hollis, 9 N. H. 107, 109. Hence, while in such custody he was not without means of support, and the town of Plymouth was under no legal obligation to support him and cannot recover of the town of Haverhill therefor. In the opinion of the majority of the court, from December 22, 1896, until February 22, 1897, upon the facts stated, Frizzell was legally in the custody of the sheriff of the county, confined on criminal process. In this conclusion Judge Pike and myself do not concur. The result is that the plaintiffs are entitled to judgment for the expense incurred prior to December 22, 1896, only.

*Case discharged.*

WALLACE, J., did not sit: the others concurred.

---

## MEMORANDUM.

On the eighteenth day of August, 1898, Chief Justice CLARK, having attained the age of seventy years, retired under the limitation of the constitution.

On the same day, Mr. Justice BLODGETT was appointed chief justice of the court to fill the vacancy occasioned by the retirement of Chief Justice CLARK, and Mr. JOHN EDWIN YOUNG was appointed an associate justice of the court to fill the vacancy occasioned by the appointment of Mr. Justice BLODGETT to be chief justice, and took his seat upon the bench October 18, 1898, at the trial term then held at Lancaster.